IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES HOWARD MCLEAN,           )
                                )
            Plaintiff,          )
                                )
      v.                        )     1:16CV991
                                )
CAPTAIN SANDRA MILLER, et. al., )
                                )
            Defendants.         )

## MEMORANDUM OPINION RECOMMENDATION AND ORDER
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court upon Defendants' motion for summary judgment. (Docket Entry 47.) This matter is ripe for disposition. For the following reasons, the Court will recommend that Defendants' motion for summary judgment be **GRANTED in part and DENIED in part**.

### I. BACKGROUND

This case arises out of correctional officers' use of physical force against Plaintiff James Howard McLean, a *pro se* prisoner of the State of North Carolina in the custody of the North Carolina Department of Public Safety ("NCDPS"). The uncontroverted facts are as follows. On September 24, 2015, Plaintiff—then a pretrial detainee at Scotland County Detention Center ("Scotland")—filed a grievance indicating that he was officially on a hunger strike. (Docket Entry 50-2 at 3.) He explained that because his specially-prepared and marked food trays had been tampered with, he feared for his safety. (*Id.*) He also specifically noted that

he was not otherwise suicidal. (*Id.*) To address concerns of self harm arising from Plaintiff's hunger strike, Defendant Captain Sandra Miller ordered that Plaintiff be placed on suicide watch. (Miller Decl. ¶¶ 5-6, Docket Entry 48-1 at 3-4.) Defendant Sergeant Stephanie Hudson and Defendant Detention Officers Clinton Gooselin, Laura Prevatte, and Chris Strickland attempted to carry out Captain Miller's order by escorting Plaintiff, unrestrained, to the "drunk tank" where Scotland monitors inmates on suicide watch. (Compl. § V, Docket Entry 2 at 4-6; Hudson Aff. ¶ 3, Docket Entry 48-2 at 3-4; Gooselin Aff. ¶ 3, Docket Entry 48-3 at 3; Prevatte Aff. ¶ 2, Docket Entry 48-4 at 3-4; Strickland Aff. ¶ 2, Docket Entry 48-5 at 2-4.) As they approached the "drunk tank," Plaintiff punched Officer Gooselin. (Compl. § V; Hudson Aff. ¶ 3; Gooselin Aff. ¶ 4; Prevatte Aff. ¶ 4; Strickland Aff. ¶ 2.) Officer Gooselin punched Plaintiff back. (Compl. § V; Hudson Aff. ¶ 3; Gooselin Aff. ¶ 4; Prevatte Aff. ¶ 4; Strickland Aff. ¶ 2.) Officer Gooselin restrained Plaintiff on the ground until Officers Prevatte and Strickland administered pepper spray. (Compl. § V; Hudson Aff. ¶ 3; Gooselin Aff. ¶ 4; Prevatte Aff. ¶ 4; Strickland Aff. ¶ 2.) The Officers then handcuffed Plaintiff, rinsed off the pepper spray, and made sure he was seen by the jail nurse. (Hudson Aff. ¶¶ 3-4; Gooselin Aff. ¶¶ 4-5; Prevatte Aff. ¶¶ 4-6; Strickland Aff. ¶ 2-4.) Plaintiff received further treatment at Scotland Memorial Hospital. (Docket Entry 20-2 at 15-36.) Hospital records reveal that Plaintiff had facial lacerations, head injury with headache, maxillary sinus fracture, neck strain, orbit fracture, and periorbital contusion. (*Id.*)

On July 25, 2016, Plaintiff filed a complaint against Defendants pursuant to 42 U.S.C. § 1983 alleging Defendants subjected Plaintiff to excessive force. (*See generally*, Compl., § V, Docket Entry 2.)[1] In his Complaint, Plaintiff recounts the incident as follows:

> Detention Officer Clinton Gooselin grabbed Plaintiff in which Plaintiff struck Officer Gooselin one time and then dropped to his knees with his hands out to submit to the cuffs. Sgt. Stephanie Hudson took her handheld radio and struck Plaintiff on the right side of his face just below his right eye on top of his cheekbone while he was in this submissive position. Officer Clinton Gooselin then kicked Plaintiff in the face. Plaintiff was then peppered sprayed by Officer Laura Prevatte and Officer Chris Strickland.

(*Id.* at 5-6.)

Plaintiff seeks declaratory judgment and compensatory and punitive damages.

On March 20, 2017, Plaintiff pled guilty in Scotland County Superior Court to the offense of assaulting a governmental official in the course of his duties in connection with his having punched Officer Gooselin on September 24, 2015. (Docket Entry 48-7 at 7). On June 22, 2017, the Court entered a discovery scheduling order establishing a discovery deadline of December 22, 2017 and a January 22, 2018 deadline to file dispositive motions. (Docket Entry 35.) On November 2, 2017, Defendants served Plaintiff via certified mail their first set

---

[1] Plaintiff's complaint alleges several incidents in which his food tray was contaminated or missing items. Plaintiff also complains that he was not taken to the hospital until two hours after the incident. He further complains that when he returned from the hospital, he was "was placed in a suicide cell with nothing except for [two] mats and a green suit" for five days before being transferred to Robeson County Jail. However, Plaintiff's prayer for relief seeks declaratory judgment only as to excessive force. Plaintiff does not explicitly allege either deliberate indifference to a serious medical need or a constitutional violation stemming from the conditions of his confinement. The Court therefore declines to further address these allegations.

of requests for admissions ("requests for admissions") and first set of requests for production of documents ("requests for production"). (Docket Entry 43-1.) On November 15 and 16, 2017, Plaintiff filed two letters in which he indicated that he did "not understand the things the Defendants' counsel is arguing" and asked the Court to appoint counsel to represent him. (Docket Entries 43, 44.) To these two letters, Plaintiff attached his copies of Defendants' requests for admissions and requests for production. (Docket Entries 43-1, 44-1.) On November 21, 2017, the Court denied Plaintiff's motions to appoint counsel. (Text Order dated Nov. 21, 2017.)

Defendants now move for summary judgment. (Defs.' Mot. Summ. J., Docket Entry 47.) In support of their motion, Defendants have submitted (1) a memorandum of law (Defs.' Mem. Supp. Mot. Summ. J., Docket Entry 48); (2) their own declarations and affidavits (Miller Decl.; Hudson Aff.; Gooselin Aff.; Prevatte Aff.; Strickland Aff.); and (3) Plaintiff's criminal records (Docket Entries 48-6, 48-7). Defendants also reference their requests for admissions. (Defs.' Mem. Supp. Mot. Summ. J. at 4; Docket Entry 43-1.) Defendants accurately represent the supporting declarations and affidavits in the following summary of their version of the September 24, 2015 incident:

> As the Detention Officers and the Plaintiff reached the hallway leading to the segregated holding cell, the Plaintiff apparently realized that he was being placed on a suicide watch. The Plaintiff stopped walking and became combative, loudly proclaiming that would not put on the "Turtle Suit" or go to the segregated holding cell. After being told that he did not have a choice in the matter, the Plaintiff shouted "Fuck Captain Miller" and, without warning, punched Officer Gooselin in the left side of his face with a closed fist, injuring Officer Gooselin's eye and

4

> nose. Defending himself, Officer Gooselin punched the Plaintiff back, striking him in the right side of his face, and then wrestled the Plaintiff down to the floor.
>
> Sergeant Hudson, Officer Prevatte, and Officer Strickland moved to assist Officer Gooselin in his efforts to gain control over the Plaintiff. The defendant Detention Officers repeatedly ordered the Plaintiff to surrender and stop resisting, but he refused to obey their commands.
>
> The Plaintiff continued to resist efforts to subdue him until defendants Officer Prevatte and Officer Strickland deployed their OC pepper spray against him. The OC pepper spray had the intended effect, causing the Plaintiff to stop fighting and submit to being handcuffed. After Detention Officers handcuffed the Plaintiff, they assisted him to his feet and took him to a shower where he could wash the pepper spray residue out of his eyes and off of his face. Other than Officer Gooselin's counter-punch immediately after being punched in the face by the Plaintiff, none of the defendants hit, kicked or otherwise struck the Plaintiff in any way.

(Defs.' Mem. Supp. Mot. Summ. J., Docket Entry 48 at 9-10 (internal citations omitted); Miller Decl. ¶ 6-8; Hudson Aff. ¶¶ 3, 4, 6; Gooselin Aff. ¶¶ 3-5, 8; Prevatte Aff. ¶¶ 3-4, 6-7; Strickland Aff. ¶¶ 2-5.)

In opposition to Defendants' motion for summary judgment Plaintiff has filed (1) his own declaration (McLean Decl., Docket Entry 50-1); (2) records of Assistant District Attorney J. Shober's interviews with Officers Gooselin and Prevatte and Sergeant Hudson (Docket Entry 50-2 at 1-2, 9); records of Assistant District Attorney Ashley E. Weilman's interviews with Officer Gooselin and Detective Roger Alford (Docket Entry 50-2 at 7-8, 10); Plaintiff's September 24, 2015 grievance as well a similar grievance and related correspondence from September, 2014 (Docket Entry 50-2 at 3-6); the incident reports Officers Gooselin, Prevatte,

5

Strickland, and Sergeant Hudson signed on September 25, 2015 (Docket Entry 50-2 at 11-14); Plaintiff's September 24, 2015 treatment records from Scotland Memorial Hospital (Docket Entry 50-2 at 15-36); and the transcript of Plaintiff's March 20, 2017 plea agreement for the September 24, 2015 incident (Docket Entry 50-2 at 37-40).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the Court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913;

6

*Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997). However, the party opposing summary judgment may not rest on mere allegations or denials, and the court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Anderson*, 477 U.S. at 248-49. Here, Plaintiff is a *pro se* litigant; thus, his pleadings are to be liberally construed. *Graham v. Geneva Enters., Inc.*, 55 F. App'x 135, 136 (4th Cir. 2003).

### III. DISCUSSION

Defendants seek summary judgment on the grounds that (A) Defendants' requests for admissions are deemed admitted by operation of Federal Rule of Civil Procedure 36, and those admissions are fatal to Plaintiff's claims; (B) the undisputed facts demonstrate that Plaintiff's excessive force claim fails as a matter of law; and (C) Defendants are all entitled to qualified immunity. Defendants' arguments will be addressed in the order set forth above.

#### A. Requests for Admissions

The Federal Rules of Civil Procedure ("the Rules") provide,

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
> (A) facts, the application of law to fact, or opinions about either; and
>
> (B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a). Pursuant to the Rules, "[a] matter is admitted unless, within [thirty] days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).[2]

Here, Defendants served their requests for admissions on November 2, 2017. (Docket Entry 43-1.) Plaintiff's response was therefore due on December 5, 2017. According to Defendants, Plaintiff did not respond to the requests for admissions within the thirty-three-day time period mandated by Federal Rules of Civil Procedure 36(a)(3) and 6(d). (Docket Entry 48 at 2.) However, Plaintiff's motion to appoint counsel, postmarked November 13, 2017, was filed within that time period. In that motion, Plaintiff indicated that he did "not understand the things the Defendants' counsel is arguing," and enclosed copies of Defendants' requests for admissions. (Docket Entries 43 at, 43-1.) Plaintiff also contends that he mailed a handwritten reply to Defendants' requests responding as "best [he] could." (McLean Decl. at 2.)[3]

Even if Plaintiff's letter to the Court could not be liberally construed as an objection, and Plaintiff's response was either not mailed or not received, the Court nevertheless declines to deem Defendants' requests for admissions admitted. For a variety of reasons, courts—

---

[2] Federal Rule of Civil Procedure 6(d) allows an additional three days to respond when service is made by mail.

[3] Plaintiff's contends that his reply was written without the benefit of the original requests, which the Court did not returned to him. (McLean Decl. at 2.) Defendants deny receiving any such handwritten reply and note that even if Plaintiff did serve a response on December 13, 2017, it was not timely. (Docket Entry 51 at 2-3.)

8

including this one—have sometimes declined rigidly to apply Rule 33(a)(3) against *pro se* parties. *See Simmons-Blount v. Guilford Cty. Bd. of Educ.*, No. 1:06-CV-944, 2009 WL 962266, at *4 (M.D.N.C. Apr. 7, 2009) (unpublished); *but see Bakayoko v. Panera Bread*, No. 1:14CV993, 2015 WL 5511068, at *2 (M.D.N.C. Sept. 17, 2015) (unpublished). Courts have reasoned that "Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of *pro se* litigants to have their cases fairly judged on the merits." *In re Savage*, 303 B.R. 766, 773 (Bankr. D. Md. 2003).

More specifically, first, some courts have declined to deem requests for admission admitted "on the grounds that such a party may not have understood the effect of failure to respond to the requests." *United States v. Renfrow*, No. 5:07–CV–117–FL, 2009 WL 903202, at *3–4 (E.D.N.C. Jan. 26, 2009) (unpublished) (citing *Jones v. Jack Henry & Assocs., Inc.*, Civ. No. 3:06cv428, 2007 WL 4226083, at *2 (W.D.N.C. Nov. 30, 2007) (unpublished) (declining to deem unanswered requests admitted where there was no evidence in the record that *pro se* plaintiff was ever notified of the consequences of failing to respond). Second, other courts have hesitated to deem requests for admission admitted against *pro se* plaintiffs when the admissions ask the plaintiff to concede essential elements of his or her claim or facts that are obviously in dispute. *Abdul-Waali v. Restart, Inc.*, No. 10-0567-CV-W-JTM, 2011 WL 5599257, at *1 (W.D. Mo. Nov. 17, 2011) (unpublished) (quoting *Lyons v. Santero*, 2011 WL 3353890, at *3 (C.D. Cal. May 11, 2011) (unpublished) ("[I]t is difficult not to come to the conclusion that [the defendant] merely 'propounded the requests hoping [p]laintiff would concede essential elements by failing to file timely responses.'"). On these bases, some courts "have been

9

reluctant to award summary judgment [solely] on the basis of a *pro se* party's default." *Renfrow*, 2009 WL 903202, at *3–4; *see United States v. Turk*, 139 F.R.D. 615, 618 (D. Md. 1991).

All of these causes for concern are present here. First, although the Defendants' requests indicated that Plaintiff's "responses . . . must be served upon counsel for the Defendants within thirty (33) [sic.] days after service hereof," neither the requests nor the cover letter to the requests indicated the consequences of failing to respond. (Docket Entry 43-1 at 1; Docket Entry 44-1.) Plaintiff even advised the Court that he did not understand. Second, Defendants' admissions go directly to the ultimate question of liability and ask Plaintiff to concede essential elements of his claim. Most notably, number eleven asks Plaintiff to "[a]dmit that you were not subjected to any excessive force by any of the defendants on September 24, 2015." As Defendants remind the Court, these admissions would be "fatal" to Plaintiff's claim. Yet, as explained below, without these potential admissions and viewing the remaining evidence of record in the light most favorable to Plaintiff, a genuine issue of material fact exists such that a jury could find that Defendants subjected Plaintiff to excessive force. The Court thus declines to deem admitted requests for admissions that would require it to recommend summary judgment based solely on Defendants' alleged failure to respond.

B.  **Excessive Force**

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated his constitutional rights through the use of excessive force. (*See* Compl. at 7.)[4] "Section 1983 of Title 42 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). A pretrial detainee seeking to prove an excessive force claim need only show that the officers' use of force was objectively unreasonable. *Kingsley*, 135 S. Ct. at 2470. A plaintiff can "prevail by showing that the [defendants'] actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. *Mills v. Rich*, No. 7:13-CV-138-BO, 2015 WL 5139198, at *4 (E.D.N.C. Sept. 1, 2015) (unpublished) (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). The following considerations, among others, may bear on the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of

---

[4] Although Plaintiff's response to Defendant's motion for summary judgment contemplates that his excessive force claim arises under the Eighth Amendment's prohibition on cruel and unusual punishment (Docket Entry 50 at 1), as a pretrial detainee, Plaintiff's claims fall under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all.").

11

force; the severity of the security problem at issue; the threat
reasonably perceived by the officer; and whether the plaintiff was
actively resisting.

*Kingsley*, 135 S. Ct. at 2473 (citing *Graham*, 490 U.S. at 396).

### 1. Officers Gooselin, Strickland, Prevatte and Sergeant Hudson

The parties' versions of the incident, as detailed in the Background section above, differ in two significant respects. First, Plaintiff alleges that after he punched Officer Gooselin, he physically and verbally submitted to the officers' authority. Specifically, Plaintiff claims he assumed a "submissive position," that is, he "dropped to his knees with his hands out to submit to the cuffs." Second, Plaintiff asserts that he was struck by more than one blow. Specifically, Plaintiff claims that Officer Gooselin kicked him in the face and that Sergeant Hudson hit him in the face with her handheld radio.[5]

There is no dispute that Plaintiff threw the first punch. Neither does Plaintiff assert that Officer Gooselin's initial counter-punch was excessive. Rather, Plaintiff alleges that the force used was excessive was he was kicked in the face, hit in the face with a handheld radio, and pepper sprayed after he had physically and verbally surrendered. A reasonable jury could

---

[5] Hospital records indicate that Plaintiff "[complained of] being flung to the ground by prison guards and hitting his face on the ground." (Docket Entry 50-2 at 25.) Defendants argues that this record "demonstrate[s] that Plaintiff's injuries were not caused by any punch or strike by Detention Officer Gooselin but instead, as Plaintiff reported to doctors on September 24, 2015, as a result of his face hitting the floor after being taken down to the ground . . . ." The Court does not find this inconsistency so significant as to defeat Plaintiff's claim of excessive force at this stage. After all, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Med. Shoppe Int'l, Inc. v. Siddiqui*, 549 F. App'x 131, 134 (4th Cir. 2013) (quoting *Anderson*, 477 U.S. at 255 (1986)).

agree. *See Rowlery v. Genesee Cty.*, 641 F. App'x 471, 475–76 (6th Cir. 2016) (citing *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir.2006); *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir.1981) (affirming District Court's holding that "it also well established that it is unconstitutional to punch a detainee once he has already been subdued.")).

Construing the evidence in the light most favorable to Plaintiff, the *Kingsley* factors weigh in favor of Plaintiff. Taking Plaintiff's version of events as true, Plaintiff's surrender meant that he was not actively resisting. In addition, it is undisputed that Plaintiff was outnumbered four to one, and there were no other prisoners nearby. Thus, particularly in light of his surrender, a reasonably jury could conclude that Plaintiff posed only a minimal threat and that the security problem at issue was not—or at least was no longer—severe. Further, no evidence now before the Court shows any effort to temper or limit the force used. Finally, Plaintiff's injuries were fairly significant: he suffered facial fractures and a laceration on his cheek that required four stitches. Based on the foregoing, a reasonable jury could find that while there was a need for force, the amount of forced used was excessive in relation to that need. Sergeant Hudson and Officers Gooselin, Prevatte, and Strickland's motions to dismiss should therefore be denied.

### 2. Captain Miller

Captain Miller argues that she is entitled to summary judgment because it is undisputed that she did not personally use any force against Plaintiff and was not present during the incident in question. Plaintiff counters that Captain Miller was the officer in charge, that she gave the order to place Plaintiff on suicide watch, and that her order led to his assault. (Pl.

13

Decl., Docket Entry 50-1 at 3.) Plaintiff's claim against Captain Miller rests on his contention that but for Captain Miller's wrongful order to place Plaintiff on suicide watch, he would not have been beaten and assaulted. (*Id.*) Plaintiff's claim against Captain Miller fails.

At the outset, the Court notes that Plaintiff has not alleged that Captain Miller was liable in her supervisory capacity. Neither does Plaintiff attempt to show that Captain Miller knew that subordinate prison officials were engaged in the use of excessive force, that she was deliberately indifferent to that conduct, or that her deliberate indifference caused Plaintiff's injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.1990) (setting forth three elements for supervisory liability); *Slakan*, 737 F.2d at 373; *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983)). As to any claim based on Captain Miller's personal involvement, no reasonable jury could find that her order to place Plaintiff on suicide watch exposed her to liability. It is undisputed that Plaintiff punched Officer Gooselin before any of the officers use force against him. Thus, the officers' use of force—whether objectively reasonable or not—at least initially was in response to Plaintiff's own aggression toward one of the officers. If there was any causal link between Captain Miller's order and the use of force, which has not been shown, it was superseded by Plaintiff's assault on Officer Gooselin. *See Kane v. Lewis*, 604 F. App'x 229, 237 (4th Cir. 2015) (quoting *James v. Chavez*, 511 F. App'x 742, 750 (10th Cir. 2013)) ("[Plaintiff's] unlawful and deliberate attack on the [police] constitute[d] superseding cause of his death." (internal quotations omitted)

14

(alterations in the original)).[6] Therefore, even if Captain Miller's order to place Plaintiff on suicide watch was somehow wrongful or unjustified, it would not, without more, expose her to liability. Captain Miller's motion for summary judgment therefore should be granted.

### C. Qualified Immunity

Defendants further assert that they are entitled to qualified immunity. (Defs.' Br., Docket Entry 48 at 19-22.) Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) ("Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"). Thus, the traditional two-step qualified immunity inquiry requires a court to determine: "(1) whether the official violated a constitutional right; and if so, (2) whether the right was 'clearly established' at the time of its violation." *Rock for Life-UMBC v. Hrabowski*, 411 Fed. App'x 541, 546-47 (4th Cir. 2010). In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged

---

[6] *See Shaw*, 13 F.3d at 807 (K.K. Hall, dissenting in part) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690–691 (1978); *Martinez v. California*, 444 U.S. 277, 285 (1980) ("Section 1983 should be read against the background of tort liability. Though a person is ordinarily liable for the natural consequences of his actions, neither traditional tort law nor § 1983 imposes liability where causation, though present in fact, is too remote." (internal citations and quotations omitted)).

or shown a violation of a constitutional right at all. *See Pearson v. Callahan*, 555 U.S. 223 (2009).[7] Further, "[b]ecause qualified immunity is designed to shield officers not only from liability but from the burdens of litigation, its establishment at the pleading or summary judgment stage has been specifically encouraged." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Here, "[t]he fact that pretrial detainees have a Fourteenth Amendment Due Process right to be free from excessive force, which is balanced against the legitimate interests that stem from the government's need to manage the detention facility, has long been clearly established." *Greene v. Cty. of Durham Office of the Sheriff Dep't*, No. 1:14-CV-153, 2016 WL 4507355, at *11 (M.D.N.C. Aug. 26, 2016) (unpublished) (citing *Bell v. Wolfish*, 441 U.S. 520, 538-40 (1979)). Thus, since Plaintiff "has alleged a clearly established right, summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of [the Defendants]." *Buonocore v. Harris*, 65 F.3d 347, 359-60 (4th Cir. 1995). Such is the case here. "Although a jury ultimately may find that the [Defendants'] version of the events is more credible, [the Court is] not permitted to make such credibility determinations when considering whether a [prison official] properly [is] held immune from suit under the doctrine of qualified immunity." *Meyers*, 713 F.3d at 733. In sum, at this juncture, Defendants should not be entitled to summary judgment on qualified immunity grounds.

---

[7] In *Pearson*, the Supreme Court overruled the mandatory two-step sequence adopted in *Saucier v. Katz*, 533 U.S. 194 (2001), in analyzing qualified immunity. Thus, after *Pearson*, courts are free "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances . . . ." *Pearson*, 555 U.S. at 236.

16

## IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 47) be **GRANTED** as to Captain Miller and **DENIED** as to Officers Gooselin, Prevatte, Strickland and Sergeant Hudson.

**IT IS HEREBY ORDERED** that Plaintiff's request for jury trial (Docket Entry 45) be **GRANTED**.

/s/ Joe L. Webster<br>
Joe L. Webster<br>
United States Magistrate Judge

Durham, North Carolina
June 15, 2018